ROUNDTREE *v.* FORD MOTOR CO.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—DISABILITY—FOOT INJURY—EVIDENCE.

Finding of fact by department of labor and industry, in proceeding for further compensation for injury to foot, that plaintiff had failed to establish disability as result of injury received a year and nine months previous to filing instant petition *held,* supported by testimony in the record.

2. SAME—FINDING OF FACT BY DEPARTMENT BINDING ON SUPREME COURT.

Supreme Court is bound by finding of fact of department of labor and industry which is supported by evidence.

3. SAME — AGREEMENT SUSPENDING COMPENSATION — EMPLOYEE'S BURDEN OF PROOF AS TO DISABILITY.

An agreement of employee and employer suspending payment of compensation, entered into after former had reentered service of employer, and approved by the department of labor and industry still leaves employee with burden of showing, upon subsequent application for further compensation, that he is under disability resulting from the accident in consequence of which the original award was made.

Appeal from Department of Labor and Industry. Submitted January 5, 1938. (Docket No. 38, Calendar No. 39,739.) Decided February 24, 1938.

Clarence Roundtree presented his claim for compensation against Ford Motor Company, employer, for injuries suffered in defendant's employ. On petition for further compensation. Award denied. Affirmed.

*Eugene P. Berry,* for plaintiff.

*E. C. Starkey* and *W. J. Jones,* for defendant.

NORTH, J. This is an appeal from an award of the department of labor and industry where upon review of plaintiff's petition for further compensation the award of $5 per week made by the deputy commissioner was reversed and compensation denied. Plaintiff has appealed.

While working in the plant of the defendant company plaintiff sustained an injury in the following manner. A billet or bar of steel eight inches square, approximately 10 feet in length and weighing about 1,800 pounds, rolled or fell against plaintiff's right foot and injured it at a point between the ankle and the heel. An agreement for compensation was entered into and approved by the department. Compensation at the rate of $18 per week was paid for a short period. Thereupon compensation was suspended by a supplemental agreement which was filed with the department March 12, 1935, and approved by it two days later. Plaintiff had previously returned to his employment with defendant company. He was given light work for about a month and thereafter, at least during a portion of the time that he remained in defendant's employ, resumed the same work at which he had been employed prior to his injury. He continued in defendant's employ until June 23, 1935, when he was laid off. He filed his present petition for further compensation October 13, 1936.

The general character of plaintiff's claimed injury and the conclusions reached from the testimony by the department are indicated by the following quoted portion of its opinion:

"The X-rays, entered by plaintiff, are really the important witness in this case. The claimed piece of detached bone is underneath the os calcis or heel bone in the notch of this bone. The os calcis toward the back is formed much in the shape of the heel of a shoe, only that the contour is softened by curved lines and the detached bone (?) is just forward of this heel. But was this detached bone, if it is bone, dislodged by the blow from the billet? Dubitation arises with respect to a causal relationship here because, *prima facie,* a blow on the side of the heel would not chip off a piece of bone underneath the heel.

"The words 'if it is bone' are used because valid doubt is allowable as to whether the small detached body is bone at all. * * *

"The plaintiff's doctors simply assume the separated fragment to be bone and they stress it as being the cause of plaintiff's claimed inability to remain on his feet over a stretch of hours. They do not discuss and refute that the fragment might not be bone or that such detached fragments are quite frequently present in feet without causing discomfort. * * *

"The one doctor sworn by the defense, Dr. William E. Johnston, does not go on record as to whether the detached body—spur he calls it—is bone or other substance. He attaches no importance to it, however. His testimony is as follows:

" 'Q. Do you attach any importance to this detached spur or whatever it is?

" 'A. These spurs develop sometimes on the os calcis independent of injury; one often finds them present without the patient realizing their being present. * * *

" 'Q. After having examined this man do you feel that he has any disability?

" 'A. In my opinion this man has no disability. * * *

" 'Q. Do you see any reason why this employee could not stand eight hours a day and work?

" 'A. No, I think this man is quite able to work.' "

While it is not embodied in the department's opinion, Dr. Johnston further testified:

"There is no swelling and both ankles measure exactly the same and there is no limitation of movement of his foot. * * *

"*Q.* Is there any indication that this man is favoring this foot?

"*A.* I tried to find that out from muscle atrophy, and which nature itself will do, if he is favoring the foot; and there is no evidence of it.

"*Q.* If this man had been favoring this foot from the time he was injured in January, 1935, up to October, 1936, as to whether or not you would expect to find some evidence of the favoring at this time?

"*A.* I would expect to find it, yes."

The department found that plaintiff had failed to establish disability as a result of the injury he received in January, 1935. Appellant's contention that this determination was not based upon testimony contained in the record, but instead upon matters "wholly outside of the record," cannot be sustained. There was testimony to support the finding of fact and we are bound by the department's determination.

Without having raised the question in any way at the time of review before the department of labor and industry, appellant urges in his brief on appeal to this court that because of our decision in *Miller v. City Ice & Fuel Co.,* 279 Mich. 592, the agreement between the parties suspending compensation should be considered a nullity; and that the original agreement for compensation made by the parties and approved by the department should be considered in full force and effect, and the department should issue to plaintiff a certificate entitling him to judgment

and execution on the basis of the original award for compensation. In this connection it should be noted that our decisions in the *Miller Case* and in the companion case, *DeTroyer* v. *Ernst Kern Co.*, 282 Mich. 689, have been interpreted, if not modified, by the opinion rendered on rehearing of the *DeTroyer Case.*

In accordance with the holding on the rehearing of the *DeTroyer Case,* the agreement for suspension of compensation entered into between these parties and approved by the department placed plaintiff in the instant case in this position: If he sought further compensation the burden was upon him to show that he was still under disability resulting from the accident in consequence of which the original award was made. This was the identical issue of fact determined by the department on its review. As hereinbefore noted, based on testimony in the record, it was adjudicated that plaintiff was not suffering any such disability. Because of this fact his petition for further compensation was denied. This was an adjudication of the controlling issue; and was in accord with proper practice contemplated in the *DeTroyer Case, supra.* It was determinative of plaintiff's alleged rights as presented to the department by his petition herein. Under the circumstances it would be improper to remand the case to the department for further consideration.

The award is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.